**FILED**

**JUNE 16, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 10:06 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| Annette Frye, | )   **Docket No.: 2016-06-0327** |
|        **Employee,** | ) |
| **v.** | )   **State File No.: 4185-2016** |
| Vincent Printing Co., | ) |
|        **Employer,** | )   **Judge Thomas Wyatt** |
| **And** | ) |
| | ) |
| Accident Fund Ins. Co., | ) |
|        **Carrier.** | ) |

---

### EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY PARTIAL DISABILITY BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on May 24, 2016, upon the Request for Expedited Hearing filed by the employee, Annette Frye, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The hearing focused on whether Ms. Frye submitted sufficient evidence to establish she is likely to prevail at a hearing on the merits in establishing (1) that her injury arose primarily out of and in the course and scope of employment, and (2) that she is entitled to temporary partial disability and medical benefits. For the reasons set forth below, the Court finds Ms. Frye is entitled to medical benefits and some of the temporary partial disability benefits she seeks.[1]

### History of Claim

Ms. Frye is a fifty-six-year-old resident of Chattanooga, Hamilton County, Tennessee. (T.R. 1 at 1.) She had worked at Vincent Printing Co. (Vincent), the employer, almost ten years on the date of injury. *Id.* Ms. Vincent's regular job was to operate a machine that made welding tape, which is the tape used to hold paper billboard advertisements in place. (Ex. 4.) On the date of injury, however, Vincent assigned her

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

the additional task of wiping down machines with denatured alcohol. (Exhibit 4.)

Ms. Frye testified the denatured alcohol had a stronger smell than regular alcohol. She asked her supervisor for a mask, but did not receive one. After wiping down a clip machine, Ms. Frye became short of breath, coughed, suffered a headache, and became dizzy. (Ex. 4.) Ms. Frye exited the plant to get some air and retrieve an inhaler from her car.[2] She testified her symptoms improved outside the plant, but worsened approximately fifteen minutes after she re-entered the plant and again smelled denatured alcohol. Ms. Frye testified she took the prescribed dosage of two puffs from her inhaler to combat her symptoms.[3]

Ms. Frye resumed operating the tape-making machine after using the inhaler. When she leaned over to check the machine, she became dizzy and began to fall. (Ex. 4.) She unsuccessfully tried to catch herself and struck the machine with her right arm and side as she fell to the ground. Ms. Frye immediately experienced right-arm and right-sided back pain. Vincent's shift supervisor called an ambulance to transport Ms. Frye to Parkridge East hospital for emergency care. (Ex. 19 at 2.)

The Parkridge records documented Ms. Frye's complaints of pelvic, low-back and arm pain following her fall. (Ex. 10 at 1, 4-7.) The emergency room doctor diagnosed a hematoma on the right arm, a hip contusion, and a lumbar sprain; he then discharged Ms. Frye with a prescription for Flexeril and took her off work until January 1, 2016. *Id.* at 6, 10, 14. During the discharge process, Parkridge issued Ms. Frye a sheet instructing her not to perform heavy lifting and, because Flexeril causes drowsiness, warning her not to drive a car or operate machinery while taking Flexeril. *Id.* at 19.

Vincent's carrier, Accident Fund Ins. Co., provided Ms. Frye a panel from which she selected Dr. Terry Smith as authorized treating physician. (Ex. 2.) The carrier scheduled an initial appointment on January 26, 2016. Dr. Smith recorded the following history from Ms. Frye in his January 26 note: "using some denatured alcohol to clean a piece of machinery. She said the smell was very strong. She became dizzy and fell, but did not lose consciousness. She had some shortness of breath with it. She hit her head and the right side of her back and hip." (Ex. 8 at 1.)

After reviewing the x-rays taken at the emergency room and performing a physical examination, Dr. Smith arrived at the following diagnosis: "[f]all and back strain." (Ex. 8 at 2.) He changed Ms. Frye's medication to Robaxin with the instruction: "[c]aution

---

[2] Ms. Frye stated she used the inhaler for symptoms of asthma and COPD. She testified that, prior to the date of injury, she had used the inhaler in times of heavy pollen and heat, but had not experienced respiratory symptoms due to smelling denatured alcohol at work. Ms. Frye testified that, although dizziness is a side effect of the medication in her inhaler, she had never experienced dizziness when using the inhaler.

[3] Ms. Frye testified she did not administer the inhaler outside the plant.

drowsiness with the Flexeril[4] driving, working around machinery, etc." *Id.* Dr. Smith ordered physical therapy and returned Ms. Frye to work under restrictions that she not squat or kneel; only occasionally bend at the waist; lift no more than ten pounds occasionally; and push or pull no more than twelve pounds occasionally. (Ex. 5 at 1.)

Ms. Frye saw Dr. Smith on four occasions between February 8, 2016, and March 21, 2016. (Ex. 5 at 3-8.) He kept her under the same restrictions imposed during the initial visit and renewed the order for physical therapy following each visit. *Id.* The Statement of Activity Work Status sheets Dr. Smith gave Ms. Smith following the March 7 and March 21 visits contain the following hand-written notation: "needs PT B4 returns." *Id.* at 7, 8.

Ms. Frye has not returned to employment since the date of injury. The emergency room physician took Ms. Frye off work from January 14 until January 17, 2016. (Ex. 10 at 10.) Ms. Frye and Greg Bates, Vincent's plant manager, testified they spoke by telephone on February 2, 2016, about Ms. Frye returning to work under the restrictions placed on her by Dr. Smith. Mr. Bates testified he offered to return Ms. Frye to work operating the welding tape machine. He claimed he told her she could sit while performing the job and could call on co-workers to perform any lifting that would violate her restrictions.

Ms. Frye testified Mr. Bates told her she could return to her tape-machine job. She stated she asked him if he had any other jobs available because the welding machine job violated her restrictions. Ms. Frye claimed Mr. Bates told her he had no other job available. She denied he told her she could sit while working and call on co-workers to perform heavy lifting. Ms. Frye testified she declined the job without attempting it because (1) the lifting, kneeling and squatting requirements of the job violated her restrictions; (2) she was in so much pain she could not perform the limited housework she attempted at home; and (3) Dr. Smith required that she undergo physical therapy before she returned to work.

The only other communication between Vincent and Ms. Frye about returning to work consisted of a letter from Vincent dated February 29, 2016. In that letter, Vincent wrote:

> We continue to have modified duty employment available to you within the restrictions since February 2, 2016 that were outlined by your treating physician. You had declined our offer at that time and continue to do so. Please contact us regarding your return to work date as soon as possible.

---

[4] The Court presumes Dr. Smith meant to reference Robaxin here because he documented he changed Ms. Frye's prescription from Flexeril to Robaxin earlier in the same paragraph.

3

(Ex. 19 at 8.)

On March 3, Ms. Frye filed a Petition for Benefit Determination, seeking the following relief: "Employer has failed to provide proof that related medical expenses have been paid. Employer has failed to provide work within Employee's restrictions and/or to pay TPD or TTD benefits. Employer has failed to authorize physical therapy as repeatedly requested by the ATP." (T. R. 1 at 1.) Vincent and its carrier denied Ms. Frye's claim on March 9, 2016, listing as the reason: "[c]laimants injuries did not arise . . . within the scope of employment, with idiopathic fall." (Ex. 17.) When mediation failed to resolve the parties' disputes, the mediator issued a Dispute Certification Notice on April 21, 2016. (T. R. 2.) Ms. Frye filed her Request for Expedited Hearing on April 28, 2016. (T. R. 3).[5]

## Findings of Fact and Conclusions of Law

The Court applies the following general legal principles in determining the issues in this Expedited Hearing. Ms. Frye bears the burden of proof on all essential elements of her claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). She need not, however, prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, she has the burden to come forward with sufficient evidence from which the Court can determine that she is likely to prevail at a hearing on the merits in establishing that her injury arose primarily out of and in the course and scope of her employment. *Id.* This lesser evidentiary standard does not relieve Ms. Frye of the burden of producing evidence of a compensable injury, but allows the Court to grant some relief if that evidence does not rise to the level of a preponderance of the evidence. *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

### *Idiopathic Injury*

Vincent contends Ms. Frye's injury was of idiopathic origin for which the Workers' Compensation Law provides no recovery. Ms. Frye counters that she fell while operating her assigned machine after she became dizzy while using denatured alcohol that Vincent gave her to wipe down other machines in her work area. Vincent argues Ms. Frye's inhaler is as likely to have caused her dizziness as denatured alcohol and, in any

---

[5] Ms. Frye did not file an accompanying affidavit with her Request for Expedited Hearing. The Clerk brought this to the attention of counsel for Vincent, who on May 19, 2016, responded that his client waived the requirement that Ms. Frye file an accompanying affidavit with her Request for Expedited Hearing. (T. R. 4, 5.) Counsel for Vincent reiterated his client's waiver at the beginning of the Expedited Hearing.

event, argues Ms. Frye is not entitled to the requested benefits because she did not come forward with an expert medical opinion establishing that exposure to denatured alcohol caused her to become dizzy and fall.

In *McCaffery v. Cardinal Logistics,* No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9-10 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015), an employee suffered injury in a crash caused when he lost control of his employer's truck due to a sneeze. The employer urged the injury was not compensable because the cause of the sneeze was idiopathic. The trial court disagreed.

The Appeals Board defined an idiopathic injury as "one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *McCaffery,* at *9. In analyzing the application of the above principle to the facts before it, the Appeals Board held that the "focus is on the causal link between the employment and the accident or injury, rather than a causal link between the employment and the idiopathic episode." *Id.* at *11. The Board found the injury was compensable because the employee was driving his employer's truck in the course and scope of employment when he sneezed. *Id.*

Ms. Frye testified she injured her back when she fell while leaning forward to check the machine Vincent assigned her to operate. Ms. Frye struck the machine as she fell to the floor.[6] Vincent's plant manager introduced several handwritten notes authored on the date of injury that corroborated Ms. Frye's testimony. (Ex. 19 at 2-6.) Michael Pope, a supervisor, wrote that he received calls from Ms. Frye's co-workers advising him "Annette had fallen and . . . that she needed an ambulance." Mr. Pope's report indicated Ms. Frye told him "she was leaning over to check the tape weld machine and lost her balance and fell[.]" *Id.* at 2. Ms. Frye's co-worker, Yonathan Viente, reported he heard Ms. Frye call his name and found her lying on the floor near the tape machine. *Id.* at 3. Another co-employee, Byron Thobono, wrote that Mr. Viente called for him and he found Ms. Frye "laying near the tape machine on the floor. She said she had fallen." *Id.* at 4. In view of the above, the Court finds that, at a hearing on the merits, Ms. Frye will prevail in establishing she suffered injury when she fell while checking the machine Vincent assigned her to operate. As such, her injury arose primarily out of and in the course and scope of employment.

During the Expedited Hearing, Vincent contended that Ms. Frye could not recover because she did not come forward with medical expert opinion explaining what caused her to fall. The Court finds no merit in this position because, in *McCaffery,* the Appeals Board focused the compensability inquiry on the mechanism of injury and not on the

---

[6] The hematoma on her right arm identified at the Parkridge Emergency Room corroborates Ms. Frye's testimony she struck the machine when she fell. (Ex. 10 at 10.)

events leading up to the injurious incident. As stated above, the Court finds that, at a hearing on the merits, Ms. Frye will prevail in establishing that she suffered injury when she fell while operating the machine Vincent assigned her to operate. Accordingly, it was unnecessary for Ms. Frye to establish by expert medical opinion why she fell.

*Medical Benefits*

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015) requires the employer to provide, free of charge to the employee, medical treatment of a compensable injury. Section 50-6-204(3)(A)(i) (2015) requires the employee to accept the treatment from a physician selected from a panel compiled by the employer or its carrier.

The Court finds that, at a hearing on the merits, Ms. Frye will prevail in establishing that the ambulance-related services and emergent care she received on the date of injury constitute reasonable and necessary treatment of her compensable injury. Accordingly, Vincent and/or its carrier shall pay the charges for said care.

Before it denied this claim, Vincent's carrier provided Ms. Frye a panel from which she selected Dr. Terry Smith as authorized treating physician. (Ex. 2.) The Court finds Vincent and/or its carrier shall authorize and schedule Ms. Frye to return to Dr. Smith for care of her compensable injury. If Dr. Smith is not available to treat Ms. Frye, the Court finds she may either select another physician at Occupational Health Services or a physician from a new panel as authorized treating physician.

*Temporary Partial Disability Benefits*

Tennessee Code Annotated section 50-6-207(2) (2015) provides for temporary partial disability benefits. In *Jewell v. Cobble Construction and Arcus Restoration*, No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-2 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015), the Workers' Compensation Appeals Board held the period of temporary partial disability benefits refers to the time during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. The compensation rate for temporary partial disability is 66 2/3% of the difference between the wage of the worker at the time of the injury and the wage she is able to earn in her partially disabled condition. Tenn. Code Ann. § 50-6-207(2).

Ms. Frye testified at the Expedited Hearing she has not worked anywhere since the date of injury due to the injury she received at work. Accordingly, she claims temporary partial disability benefits from January 14, 2016, until she returns to work or attains maximum medical improvement from her work injury.

The emergency room doctor placed Ms. Frye off work for two days following the date of injury. (Ex. 10 at 6.) The paperwork Parkridge gave Ms. Frye upon discharge,

however, instructed her not to drive or operate machinery while taking the Flexeril prescribed for her injuries. *Id.* at 19. Vincent's plant manager testified he did not offer Ms. Frye work until February 2, 2016. In view of the above, the Court finds that, at a hearing on the merits, Ms. Frye will prevail in establishing entitlement to temporary partial disability benefits from January 15, 2016, until February 2, 2016.[7]

Ms. Frye's entitlement to temporary partial disability benefits after February 2, 2106, hinges on whether Vincent offered her work within her restrictions and, if so, whether she reasonably declined to perform the work. During his testimony, Vincent's plant manager testified he offered Ms. Frye the opportunity to operate the tape machine in specific compliance with the restrictions identified on Dr. Smith's January 26, 2016 Statement of Activity Work Status form. That form, however, did not communicate that, in his office note of the same date, Dr. Smith documented he cautioned Ms. Frye against driving and working around machinery because the medication he prescribed to treat her injury caused drowsiness. (Ex. 8 at 2.) In view of the fact Dr. Smith prescribed Ms. Frye the same medication until February 22, 2016 (*Id.* at 3, 4), the Court finds that, at a hearing on the merits, Ms. Frye is likely to prevail in establishing she reasonably declined Vincent's offer to return to work operating the welding tape machine and, as such, in establishing she is entitled to temporary partial disability benefits from February 2, 2016, until February 22, 2016.

Ms. Frye's case for temporary partial disability benefits after February 22, 2016, is problematic in that Dr. Smith stopped prescribing narcotic medication beginning that date. (Ex. 8 at 4.) While Dr. Smith kept her physical restrictions intact, Ms. Frye's failure to attempt the light-duty work Vincent offered her precludes this Court from assessing both Vincent's commitment to accommodate her restrictions and Ms. Frye's ability to earn income at Vincent after February 22, 2016. In consideration of the above, the Court finds that, at a hearing on the merits, Ms. Frye is not likely to prevail in establishing her entitlement to temporary partial disability benefits after February 22, 2016.

While Vincent's and its carrier's failure to heed Dr. Smith's physical therapy order concerns the Court, that fact, standing alone, does not establish Ms. Frye was disabled from earning income. The Court recognizes that Dr. Smith wrote on the March 7 and March 22 work status sheets that Ms. Frye needed physical therapy "B4 returning" (Ex. 5 at 7, 8.); however, the evidence does not indicate whether Dr. Smith intended this notation to mean Ms. Smith needed physical therapy before returning to work or before returning for her next visit.

---

[7] The parties stipulated Ms. Frye's compensation rate at $466.87.

**IT IS, THEREFORE, ORDERED** as follows:

1. Vincent and/or its carrier shall provide Ms. Frye medical benefits by promptly scheduling an appointment with Dr. Smith. In the event Dr. Smith is unavailable or unwilling to treat her, Ms. Frye shall promptly inform Vincent and/or its carrier whether she wishes to receive ongoing care of her compensable injury from another physician at Occupational Health Services or from a physician she selects from a panel.

2. Upon presentment of appropriate billing records, Vincent and/or its carrier shall pay the charges related to the emergent care Ms. Frye received on the date of injury, including but not limited to the charges of Hamilton County EMS and Parkridge East Hospital.

3. Vincent shall pay Ms. Frye temporary partial disability benefits at the weekly rate of $466.87 from January 15, 2016, to February 22, 2016, totaling $2,602.27.

4. This matter is set for an Initial (Scheduling) Hearing on August 15, 2016, at 10:00 a.m. Eastern Time. The parties shall call in to 855-747-1721 (toll-free) or 615-741-3061 to participate.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 16th day of June, 2016.

_____
**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-**

8

**741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order Denying to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation

Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

<u>Exhibits:</u>

1. Wage Statements;
2. Agreement Between Employer/Employee Choice of Physician form;
3. First Report of Injury;
4. Employee's Report of Injury form completed by Ms. Frye;
5. Statement of Activity Work Status forms/Occupational Health Services;
6. Certificate to return to work or school/Dodson Avenue Health Center;
7. Medical bills (for identification purposes only);
8. Records of Occupational Health Services/Dr. Terry W. Smith;
9. Patient Care Report/Hamilton County EMS (for identification purposes only);
10. Records of Parkridge East Hospital Emergency Department;
11. Material Safety Data Sheet—Denatured Alcohol;
12. Safety Data Sheet with Product and Company Identification—Denatured Alcohol;
13. Job Description;
14. Photograph of welding tape machine;
15. Letter of February 29, 2016, from Vincent Printing to Ms. Frye regarding modified duty employment;
16. Letter of February 22, 2016, from Attorney Berke's assistant to Accident Fund Ins. Co. regarding temporary disability benefits;
17. Notice of Denial of Claim for Compensation dated March 10, 2016;
18. Material Safety Data Sheet with Product and Company Identification—Denatured Alcohol; and
19. Vincent Printing notes pertaining to Ms. Frye's alleged injury and claim.

<u>Technical record:</u>[8]

1. Petition for Benefit Determination, filed March 3, 2016;
2. Dispute Certification Notice, filed April 21, 2016;
3. Request for Expedited Hearing, filed April 28, 2016;
4. E-mail correspondence from the Clerk of the Court of Workers' Compensation

---

[8] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the expedited hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Claims to counsel for Vincent Printing regarding the fact Ms. Frye filed her Request for Expedited Hearing without an affidavit, sent May 19, 2016; and

5. E-mail correspondence from counsel for Vincent Printing to the Clerk of the Court of Workers' Compensation Claims waiving requirement that Ms. Frye file an affidavit with her Request for Expedited Hearing, sent May 19, 2016.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 16th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Ronnie Berke, Attorney | | | X | Ronnie@berkeattys.com; margo@berkeattys.com |
| Gordon Aulgur, Attorney | | | X | Gordon.aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov